Filed 12/19/22  P. v. Harris CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B310323 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. NA086936 |
| v. | |
| TEVIN HARRIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James D. Otto, Judge.  Reversed and remanded with directions.

Law Office of Paul Kleven and Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant was sentenced to state prison for a term of 50 years to life on his conviction for first degree murder, under the felony murder doctrine, and robbery, with criminal street gang and firearm use enhancements. (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17), 211; 186.22, subd. (b)(1)(C), 12022.53, subds. (d) & (e)(1).)[1] The court later vacated the murder conviction under section 1172.6 and resentenced defendant to a term of 30 years to life on the robbery conviction and firearm/gang enhancements.

On appeal, defendant contends he is entitled to the benefit of recently enacted ameliorative laws that took effect before his judgment was final. The People concede remand is necessary in light of the new laws. We therefore reverse the true findings as to the gang and firearm use allegations, vacate defendant's sentence, and remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

The evidence at defendant's trial established the following:

On April 4, 2009, Brian Lee and Garrett Norris went to Orizaba Park to play basketball. Norris placed his iPhone by the pole holding up the backboard. Nine-year-old Aaron was playing in pick-up games at the court along with his brother Francisco and their friends Jose and Asaf. They played with Norris and Lee for a while, and then sat courtside watching others play. The boys saw two African American men standing near the basketball court. Hearing one of them say, " 'Hey, man,' " or " 'Hey, you,' " Asaf approached the men and asked, " 'Can I help you?' " One of them replied, " 'Stay the fuck out

---

[1]     Statutory references are to the Penal Code.

of my business.' " Francisco asked if the men were going to play, but they said they would just watch.

The African American men then approached the backboard pole. Aaron saw them whispering to each other and then one of them started walking away. Ten seconds later, the other man picked up Norris's cell phone and started walking toward a nearby alley. Jose also saw one of the men leave first and the remaining man then reach down and grab a cell phone from the base of the backboard pole. Asaf, too, had seen the two men whispering together before the phone was taken. Someone yelled out that a phone had just been stolen. By this time, the two African American men were both headed toward the alley. Aaron, Francisco, Jose, and Asaf saw the men go into the alley.

After running toward the backboard pole and confirming his phone had been taken, Norris ran after the two men. Lee and the boys also started chasing the men. When he reached the alley, Lee saw one of the men point a gun at Norris and shoot him. Norris walked a few steps before collapsing. Lee, who was in medical school, saw that Norris had been shot and began performing CPR. Norris had sustained a non-fatal gunshot wound to the abdomen and a fatal gunshot wound to the neck.

Aaron and Jose identified defendant in court as one of the men they saw standing next to the pole at the basketball court who later ran into the alley where Norris was shot. Francisco identified defendant from a photo lineup as the man who took Norris's phone. Although defendant looked different in court than he did in the photograph, Francisco testified defendant was the same man he selected from the photo lineup. Asaf had identified defendant in a photo lineup, but he was

3

uncertain the man he identified was one of the men he had seen in the park.

Defendant's mother, Martha Green, told Detective Mark McGuire she had spoken to defendant about the incident and that he had given her the following account. He had been walking by himself near the park when he saw some people playing basketball, so he headed in their direction. He spotted an iPod on the ground, picked it up and started running away. He looked behind him and saw that he was being chased. Then he heard gunshots and he thought people were shooting at him. He kept going.

At trial, Green denied having spoken to defendant about the incident and testified she was drunk when she talked to Detective McGuire. Green acknowledged it was her voice on a recording of the conversation with McGuire, but she denied having ever said defendant was at the park that day or involved in a theft.

A gang expert testified defendant was a member of the Baby Insane gang, a subset of the Insane Crips. The gang's primary activities included robbery and murder. Robbery of cell phones was common. Orizaba Park was in Baby Insane territory.

Davion Davis testified he was a member of the Baby Insane gang and he knew defendant, but he denied defendant was in the gang. Davis testified he had been at Orizaba Park on the day of the shooting and defendant was not the man who had run from the basketball courts while holding a gun. That person was T-Bam, another Baby Insane gang member.

The jury convicted defendant of murder (§ 187, subd. (a)) under the felony murder doctrine and second-degree robbery (§ 211). The jury also found the gang (§ 186.22, subd. (b)(1)(C))

and firearm (§ 12022.53, subds. (d) & (e)(1)) special allegations to be true as to both counts.[2]  Defendant received a sentence of 50 years to life in state prison for the murder (25 years to life plus an additional 25 years to life for the firearm enhancement), and a stayed sentence of 30 years to life for the robbery (the high term of five years plus an additional 25 years to life for the firearm enhancement).

After an unsuccessful appeal to this court, defendant filed a petition for writ of habeas corpus, which included a claim that he was entitled to resentencing under section 1172.6 (former section 1170.95).  The trial court denied the petition, but construed the section 1172.6 claim as a petition for resentencing. The People did not oppose resentencing, and the court granted the petition, dismissing the murder conviction.  The court then resentenced defendant to an aggregate term of 30 years to life: the high term of five years for the robbery conviction, plus 25 years to life on the firearm enhancement.

Defendant filed a notice of appeal.

---

[2]  As we observed in our opinion affirming defendant's convictions, the evidence established defendant "was the man who grabbed the phone and his companion was the one who shot Norris." (*People v. Harris* (Feb. 26, 2014, B241038) [nonpub opn.].)  Although there was insufficient evidence to establish defendant "personally and intentionally discharge[d] a firearm" (§ 12022.53, subd. (d)), the trial court sentenced him as a "principal" in each offense who committed it for the benefit of a criminal street gang because another principal in the offense had discharged a firearm and caused death.  (§§ 186.22, subd. (b), 12022.53, subd. (e)(1).)

## DISCUSSION

### 1. *Amendments to Section 186.22 Apply to this Case and Require Remand for Retrial of the Enhancements*

Defendant argues Assembly Bill No. 333 (2021–2022 Reg. Sess.) requires that we reverse the true findings on the gang and firearm allegations and remand for retrial of the enhancements under section 186.22, as recently amended (Stats. 2021, ch. 699, §§ 3, 4).  The People agree.

Assembly Bill No. 333 took effect on January 1, 2022. It amended section 186.22 by modifying the definitions of " 'pattern of criminal activity' " and " 'criminal street gang,' " and it clarified what is required to show an offense " 'benefit[s], promote[s], further[s], or assist[s]' " a criminal street gang. It also added section 1109, which requires that, if requested by the defense, a gang enhancement charged under section 186.22, subdivision (b) or (d) must be tried separately and only after the defendant's guilt of the underlying offense has been established. (*People v. Perez* (2022) 78 Cal.App.5th 192, 206 (*Perez*), review granted Aug. 17, 2022, S275090.)

Under the new legislation, " 'imposition of a gang enhancement requires proof of the following additional requirements with respect to predicate offenses:  (1) the offenses must have "commonly benefited a criminal street gang" where the "common benefit . . . is more than reputational"; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members, as opposed to persons; and (4) the charged offense

6

cannot be used as a predicate offense.' " (*Perez, supra,* 78 Cal.App.5th at p. 206, quoting *People v. Lopez* (2021) 73 Cal.App.5th 327, 345.)

The parties agree Assembly Bill No. 333 applies retroactively as the judgment is not yet final. In *In re Estrada* (1965) 63 Cal.2d 740, our Supreme Court held that, absent evidence to the contrary, the Legislature intended amendments to statutes that reduce punishment for a particular crime to apply to all whose judgments are not yet final on the amendments' operative date. (*Id.* at pp. 744–745.) Because Assembly Bill No. 333 increases the threshold for conviction of the section 186.22 offense and the imposition of the enhancement, defendant is entitled to the benefit of this change in the law. (*Perez, supra,* 78 Cal.App.5th at p. 206.)

Under this authority, Assembly Bill No. 333 applies retroactively to defendant's case, which was not final when the amendments took effect. And, as the People also acknowledge, the evidence did not establish the new statutory requirements of section 186.22. For example, the People concede, and the record confirms, no evidence was presented to prove the perpetrator of the second predicate offense was a gang member. (§ 186.22, subd. (e)(1).) Moreover, because the additional elements were not required in 2012, the jury was not instructed that it had to determine whether gang members had commonly produced a benefit to the gang that was "more than reputational." In view of this evidentiary deficit, we must vacate the gang and firearm enhancements (see fn. 2, *ante*) and remand the matter to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22.

7

Defendant also urges us to reconsider our holding in *Perez* regarding retroactive application of section 1109.[3]  The new statute, as discussed, requires a separate trial on gang allegations, if requested by the defense.  (§ 1109, subd. (a).)  In *Perez,* we recognized "section 1109 is a *procedural* statute that ensures a jury will not be prejudiced by the introduction of evidence to support gang enhancement allegations—it does not reduce the punishment imposed," and, thus, it "does not apply retroactively to a trial that has already occurred."  (*Perez, supra,* 78 Cal.App.5th at p. 207, italics added.)  Other courts, however, have reached a different conclusion, reasoning section 1109 should apply retroactively under *Estrada* because the new "legislation is geared to address wrongful convictions and mitigate punishment resulting from the admission of irrelevant gang evidence at trial."  (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1129; see also *People v. Burgos* (2022) 77 Cal.App.5th 550, 566–568, review granted July 13, 2022, S274743.)

We need not decide whether the statute is retroactive because remand will result in a new hearing that satisfies the requirements of section 1109.  (See *People v. Tran* (2022) 13 Cal.5th 1169, 1208 (*Tran*).)  Similarly, because we determine remand is necessary to retry the gang allegation, we need not consider defendant's other arguments regarding the enhancements.

To the extent defendant contends the admission of the gang evidence nonetheless rendered his trial fundamentally unfair, our Supreme Court has "reject[ed] [the] contention that the failure to bifurcate constitutes structural error."  (*Tran,*

---

[3]  The People's concession regarding retroactivity does not extend to section 1109.

*supra,* 13 Cal.5th at p. 1208.) And it is not reasonably probable that defendant was prejudiced by the trial of the gang allegations with the underlying offenses. (See *id.* at pp. 1208–1209; *People v. E.H.* (2022) 75 Cal.App.5th 467, 480.) Four eyewitnesses identified defendant as one of the men who stole Norris's phone and fled to the alley where Norris was shot. Two of those witnesses identified defendant in court. One of the witnesses identified defendant as the man who took Norris's phone—an identification substantiated by defendant's mother, who told a detective defendant admitted taking an "iPod" from the ground before running away. Defendant has not demonstrated it is reasonably probable that the jury would have rejected those eyewitness identifications absent the gang evidence. (See *E.H.*, at p. 480 ["when the evidence of guilt on the relevant charges is 'overwhelming,' as it was here, it is unlikely the defendant was harmed by the format of the trial"].)

2. ***Amendments to sections 1170 and 1385 Apply to this Case and Require Remand for Resentencing***

Defendant contends we must also remand for resentencing because he is entitled to the benefits of Senate Bill Nos. 81 and 567 (2021-2022 Reg. Sess.). The People again agree.

We begin with Senate Bill No. 567. The legislation, which took effect on January 1, 2022, amends section 1170 and makes changes affecting the trial court sentencing discretion, including the court's authority to impose the upper term for a conviction. (Stats. 2021, ch. 731, § 1.3; § 1170, subd. (b)(1), (2).) Under the amended statute, the trial court may impose an upper term sentence only where there are aggravating circumstances, and the facts underlying those circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a

9

jury or court trial.  (§ 1170, subd. (b)(1), (2).)  The amendment makes an ameliorative change in the law and thus applies retroactively to nonfinal convictions.  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)  Because the trial court imposed the upper term sentence for defendant's robbery conviction, and defendant's judgment was not final when the new law went into effect, we must remand the case for the trial court to resentence defendant in accordance with the amended statute.  (See *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.)

Senate Bill No. 81 also took effect on January 1, 2022. The legislation amends section 1385 to require a court to dismiss an enhancement if the court determines "it is in the furtherance of justice to do so," and the amended statute requires the court to consider certain mitigating circumstances in making that determination.  (Stats. 2021, ch. 721, § 1; § 1385, subd. (c)(1), (c)(3)(A)–(I).)  Proof of one or more of these circumstances weighs greatly in favor of dismissing the enhancement.  (§ 1385, subd. (c)(2).)  By its terms, the amended statute applies to sentencings occurring after the legislation's effective date.  (*Id.,* subd. (c)(7).) Because the enhancements must be retried, the amended statute applies to defendant's case.

## DISPOSITION

The true findings as to the gang and firearm use allegations are reversed, and defendant's sentence is vacated. The matter is remanded with directions to the trial court (1) to afford the People an opportunity to retry the section 186.22 gang allegation and section 12022.53, subdivisions (d) and (e)(1) firearm use allegation under the amended law; and (2) to resentence defendant under section 1170, subdivision (b), as amended.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

RICHARDSON (ANNE K.), J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11